COMMERCIAL CREDIT COMPANY *v.* HARDIN.

Opinion delivered December 12, 1927.

1. SALES—FRAUD.—In an action by one who had purchased an automobile left with the dealer by the owner to sell, in which it was shown that the car had been transferred to another before plaintiff purchased, and note and sales contract had been taken by the dealer, and sold to a credit company, evidence *held* to show that the first transfer was fraudulent as to the owner.

2. PRINCIPAL AND AGENT—LIABILITY OF PRINCIPAL.—Upon the principle that, where one of two equally innocent persons must suffer, he should bear the burden whose conduct has induced the loss, *held* that, where an automobile owner placed his car with the regular dealer for display and sale, and the dealer fraudulently disposed of the automobile, as between the original owner and the innocent purchaser of the notes and sales contract derived from the sale, the original owner must bear any loss, since he placed it within the power of the dealer to commit the fraud.

3. SALES—RIGHTS OF INNOCENT PURCHASER.—Where an automobile dealer fraudulently disposed of a car placed with him for sale, taking a note and contract which was sold to a credit company innocent of the fraud, and subsequently the dealer again sold the car to another purchaser, *held* that, as between the purchaser of the note and sales contract and a second purchaser, the rights of the former were superior.

Appeal from Clark Chancery Court; *C. E. Johnson,* Chancellor; reversed.

*McMillan & McMillan,* for appellant.

*Joe Hardage, Rogers, Barber & Henry* and *Raymond Jones,* for appellee.

McHANEY, J.   This action was instituted in the Clark Circuit Court by the Knight-Overland Company, hereinafter called the Knight Company, against appellee, J. J. Hardin, appellant, Commercial Credit Company, hereinafter called the credit company, O. L. McElhanon, J. O. Jones and Mack-Overland Company, hereinafter called the Mack Company, to recover possession of one Star coupster automobile. The credit company filed an answer and cross-complaint, making Hardin and the others defendants in the cross-complaint, and, by agreement, the case was transferred to the chancery court and tried there. It is undisputed that the title to the Star

coupster was originally in appellee, Hardin, and was acquired by him in the following manner:

He traded V. L. Massey a piece of land for two automobiles, one of which was a Willys-Knight. He left the Willys-Knight in the show window of the Mack Company, a corporation in the automobile business at Arkadelphia, in which he had formerly been a stockholder, with instructions to the Mack Company to sell the car for $1,135 in cash. The Mack Company traded the Willys-Knight to a man from Hope for the Star coupster in question, and a difference represented by title-retaining notes to the Willys-Knight, which were made payable to the Mack Company, on the forms of the credit company, and these notes were sold to the credit company and the proceeds paid to Hardin in the form of a check from the Mack Company. The Star coupster was then put in the show window of the Mack Company, by instructions from Hardin, to be sold, as he says, for $735 cash, and, if sold on a credit, the security to be approved by him; but, according to McElhanon, who was the manager of the Mack Company, it was left there to be sold as a second-hand car at the best price obtainable, and to be handled in the same manner as he had formerly handled the deal for the Willys-Knight. The Star coupster remained in the Mack Company's show room for some three or four months, and was sold by J. M. Bobo, who was in charge of the sales department for the Mack Company, to J. O. Jones, on June 29, 1926, for $850 plus service charge, making a total cost to the buyer of $946.90, of which, according to the conditional sales agreement signed by Jones and the Mack Company, by McElhanon, the buyer had paid $340 cash and agreed to pay the balance of $609.90, in twelve monthly installments of $50.57 each, the first one month after date, and monthly thereafter. Jones was an employee of the Mack Company at the time. Jones executed his note for the deferred payments, and this note and the conditional sales contract were sold and assigned to the credit company for the net sum of $510 cash, which was received

by the Mack Company and deposited to its credit in the Bank of Arkadelphia. Hardin did not get this $510. On or about September 9, thereafter, at the suggestion of Hardin, O. L. McElhanon, acting for the Mack Company and Hardin, called up the Knight Company at Little Rock about trading the Star coupster for a new Overland car, and, as a result of that conversation, went to Little Rock, where he made a trade with the Knight Company for a new Overland, by turning in the Star coupster and paying $489 cash, check for which had been given him by Hardin, signed in blank, and the new Overland car was taken back to Arkadelphia, and was left by Hardin in the Mack Company show window for sale. The July, August and September payments on the Jones note, held by the credit company, were made by the Mack Company, Jones never having taken the Star coupster out of the possession of the Mack Company, or made any payments thereon, none having been made at the time of the alleged purchase, and none of the installment payments having been made by him. The October and November payments became delinquent, and a representative of the credit company was sent to Arkadelphia to check the matter up, collect payments or take possession of the car. He interviewed Jones, who denied that he had ever purchased the car, signed the note or the contract, and he there learned that the Star coupster had been traded to the Knight-Overland Company in Little Rock, where he came and demanded the car or the money. The Knight Company, after consulting with its attorney, turned the Star coupster over to the credit company's agent, and the credit company has had the same in its possession since that time. A short time thereafter the Knight Company instituted this action as above stated, and, on a trial of the case, the court rendered a decree in favor of the Knight Company against the credit company for $550 or the delivery of the car in as good condition as it was when surrendered; in favor of the credit company against J. O. Jones and the Mack Company for the balance due on its note, $455.13, and

dismissed the complaint of the plaintiff and the cross-complaint of the credit company as to J. J. Hardin, J. B. Hardman and O. L. McElhanon for want of equity, it appearing that the Mack Company had become insolvent and J. B. Hardman had been appointed receiver therefor.

From the judgment against it the credit company has prosecuted an appeal to this court.

We think the evidence shows there were three innocent parties to this controversy: J. J. Hardin, the Knight-Overland Company and the Commercial Credit Company. We are furthermore of the opinion that the evidence conclusively shows that the pretended sale of the Star coupster to J. O. Jones by the Mack Overland Company, acting through Bobo, was fraudulent, and made for the purpose of defrauding Hardin and the credit company. The credit company is an innocent purchaser of the paper executed by Jones to the Mack Company, without any knowledge of the fraudulent transaction, and Mr. Hardin, through his agent, McElhanon, or the Mack Company, sold this car to the Knight Company without any knowledge of the former sale, although it is quite probable that his agent, McElhanon, knew all about this transaction, as it is undisputed that he signed the checks which paid the installments that were paid to the credit company on the Jones note, and, since the Mack Company was in financial straits, if not entirely insolvent at the time of the pretended sale to Jones, it is hardly possible for the company to have received $510 which was deposited to its credit as the proceeds of the sale of the Jones note to the credit company, without McElhanon knowing about it.

This case must therefore be decided, as was stated in the case of *Coffman* v. *Citizens' Loan & Investment Co.*, 172 Ark. 889, 290 S. W. 961, "upon the principle that, where one of two equally innocent persons must suffer, he should bear the burden whose conduct has induced the loss." In this case Mr. Hardin, although equally innocent of any wrong or fraudulent conduct with

the credit company, must bear the burden, because it was his conduct in putting the car in the place of business of McElhanon and the Mack Company for sale, and thereby putting it in their power to do the very things that have been done in this case. And we are of the opinion that this case is ruled by that case, in which the court quoted with approval from the Supreme Court of Appeals of Virginia, in *Boice* v. *Finance & Guaranty Corporation,* 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654, in which it was held, substantially, that chattels bought by a dealer for the purpose of indiscriminate sale to the public, offered for sale at the place of business of the dealer, and of which the dealer has charge, to all intents and purposes as that of owner, cannot be mortgaged by him, though it be an automobile and easily identified. We do not quote from this case again, as it would serve no useful purpose to do so, but we do reaffirm the principles announced in that case, which were expressly approved in the Coffman case, and hold, as a matter of law, that the fact that Hardin placed the Star coupster in the possession of the Mack Company for sale, even though with a limitation upon the price and terms of sale, puts him in no better position as regards the disposition thereof than the holder of a void chattel mortgage. Although the sale to Jones was a pretended, fraudulent and fictitious sale, the Commercial Credit Company, being an innocent purchaser of such notes, must be held to be the purchaser of such car subject to Hardin's right of redemption therein, and, it having acquired its interest in said car prior to the sale thereof to the Knight Overland Company, its rights therein are prior and paramount to that of Knight Overland Company.

We are therefore of the opinion that the chancellor erred in rendering a decree in favor of the Knight Overland Company against the credit company for $550 or the return of the car, or on any other account. We are also of the opinion that the appellee, Knight Overland Company, is entitled to a judgment against J. J. Hardin, O. L. McElhanon and the Mack Overland Com-

pany for the market value of the Star car taken in by it in its sale to Hardin of the new Overland, which the court found to be $550, and that J. J. Hardin is entitled to a judgment against O. L. McElhanon, the Mack Overland Company, J. M. Bobo and J. O. Jones for the full amount of loss sustained by him, with the right on his part to redeem the Star car from the Commercial Credit Company by paying the amount of its debt and interest, if he so desires.

The case will therefore be reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.