ARKANSAS POWER & LIGHT COMPANY *v.* BAUER, POGUE & COMPANY, INC.

4-4811

Opinion delivered November 15, 1937.

*House, Moses & Holmes* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Ashley Cockrill* and *John W. Newman,* for appellees.

HUMPHREYS, J. This suit was brought on the 10th day of December, 1935, in the chancery court of Pulaski county, Arkansas, by appellees against appellant to compel appellant to replace their name on appellant's books as the owners of 185 shares of 7 per cent. preferred stock evidenced by certificates No. NY—1263 for 100 shares and No. NYO—10017 for 85 shares, alleging that the

shares were issued to appellees in the name of Bauer-Pogue & Company, a partnership, on the 14th day of June, 1934; and that said certificates of stock were transferable on the books of appellant only by written authority from one of said parties, and that without their knowledge, and without negligence on their part got out of their possession and into the possession of appellant and that it erroneously stamped said certificates canceled, removed the name of the partnership from its books as a stockholder, and refused to pay appellees any dividends, and declined to recognize·appellees as holders of said shares of stock.

After the purchase of the stock the partnership incorporated under the laws of New Jersey. Appellant is an Arkansas corporation.

Appellant interposed a number of defenses to the action none of which were sustained by the chancery court under the evidence developed on the trial of the case, whereupon the court rendered a decree ordering appellant, within thirty days, to execute and deliver to appellees, Bauer-Pogue & Company, Inc., 185 shares of 7 per cent. preferred stock, and that it, within thirty days, render a statement of all dividends paid upon said stock since October 26, 1934, together with interest and thereupon to pay the total amount thereof to appellees with its costs from which is this appeal.

The facts developed by the evidence are, in the main, as follows: 185 shares of 7 per cent.. preferred stock, which had no voting privileges, were issued to appellees on June 14, 1934. These two certificates of stock were not indorsed in blank by appellees and were kept in its safety deposit box in the same building in which its office is situated, with about a quarter of a million dollars of other securities, some of which were indorsed by appellees in blank and others not so indorsed. Humbert Valenti was employed in 1933 by appellees in the capacity of manager and cashier and was given free access to the safety deposit box. He had worked for appellees during the years 1926, 1927, 1928 and 1932 in a minor capacity. On June 16, 1934, Valenti stole the

two certificates, forged the name of Bauer-Pogue & Company to the assignments which were a part of the certificates and forged the name of a witness to the certificates, and caused the signature to be guaranteed by the Hudson County National Bank and pledged the certificates to some brokers as collateral security. Just before the annual audit of appellees' affairs in July, 1934, Valenti obtained the possession of the certificates from the brokers and returned them to the safety deposit box. It was the custom of appellees to have an audit of their affairs annually and at the time of the audit these two certificates were in the safe with the forged indorsement upon them together with the forged signature of the witness to the indorsement. Some time after the audit, Valenti again stole the certificates which were finally delivered to Prentice & Slepack who were acting as brokers for other parties and Prentice & Slepack sent the certificates to the Union National Bank of Little Rock, Arkansas, for transfer and cancellation, said bank being the transfer agent of appellant. Said bank without any knowledge of the theft or forgery canceled the two certificates and issued new certificates therefor to the persons and firms they had been directed by Prentice & Slepack to issue them to. Neither appellant, Prentice & Slepack, nor the subsequent holders had any knowledge or notice of the theft or forgery. On May 1, 1935, which was one day before another audit was to be made, Valenti confessed to Mr. Bauer that he had stolen these certificates together with other securities, all of them being valued at $67,000. No effort was made by appellees or their bondsman to trace and follow the securities, but after many intervening conferences the appellees set up an account on their books with Valenti, charging him with $67,000, representing the market value of the stolen securities at the time of the theft and also charging him with dividends on stolen stock and interest on stolen bonds. In addition to the assignment of certain stocks and bonds an arrangement was made with the Lex Corporation, in which Valenti owned stock and was an officer, that it would pay to Herbert Meyer, Val-

enti's nominee, one-half of all its income to be paid by Meyer to appellees less 10 per cent. for his services. This arrangement was participated in by appellees and the attorney for the bonding company although the contract itself was made between the Lex Corporation and Valenti. Appellees received direct payments on the $67,000 indebtedness set up against him in the books of appellee between $13,000 and $15,000 in cash and received $25,000 from the bonding company which was credited on the books against the $67,000 charged and deposited to appellees' credit and mixed and mingled with their general funds and checked upon as their own. The total amount received by appellees by virtue of the arrangements made was about $40,000. Practically all of this money was received under the arrangements made by appellees after the confession made by Valenti that he had stolen the certificates. Appellees did not discover the forgery until sometime in September, 1935, at which time they wrote appellant and appellant's transfer agent demanding the issuance to them of 185 shares of 7 per cent. preferred stock in lieu of the certificates which had been stolen from them, canceled and transferred.

Although many defenses have been interposed to this action and elaborately and ably argued pro and con by learned counsel, we deem it unnecessary to discuss any of them except the one to the effect that appellees, under all the facts and circumstances in the case, through the negligent transaction of their business, made it possible for their employee, Humbert Valenti, to steal and forge their names to the indorsements of said stocks to others, invoking the doctrine that where one of two innocent persons must suffer, the loss should fall upon the one who made it possible for the loss to occur. This doctrine is so universal that we deem it unnecessary to cite many cases supporting the doctrine. The case of *National Safe Deposit Co.* v. *Hibbs,* 229 U. S. 391, is one of the many cases supporting the doctrine and the rule there announced is applicable, in the main, to the facts in and surrounding the instant case. It does not strike us with much force that appellees were reasonably care-

ful in the operation of their business. We think it a species of unpardonable negligence for them to have allowed an employee to enter their lock box at will where they were keeping a quarter million dollars or more of securities many of which were indorsed in blank and others not, who had been in their employment in the responsible position of cashier and manager for only a short time. Especially is this so in view of the fact that they only placed him under an annual audit. It seems to us that reasonable care would have suggested that a man handling securities of this amount and which were constantly changing that an audit should have been frequently made, but, be this as it may, the undisputed evidence is to the effect that an audit was made after the forgery had been committed by Valenti and the certificates replaced in the safety deposit box. Appellees argue that the only purpose of accountants making an audit was to count and see whether the securities were in the box; but this, is indeed, a very narrow view of what an audit should really be. It, at least, ought to include or ascertain whether the securities had been indorsed in blank and what number of securities had not been indorsed in blank. This audit should have disclosed whether these two particular certificates of stock had been indorsed in blank. If the audit had disclosed that fact and appellees knew they, themselves, had not indorsed them in blank, they could have then discovered that the indorsement in blank was a forgery. We think they are bound in good conscience and equity to have known at all times whether their securities were indorsed in blank. At least, care on their part would have revealed when the audit was made that the securities were indorsed in blank and had they done so the loss would not have occurred. No other conclusion can be reasonably drawn from this evidence that appellees were negligent at the time the audit was made and should be charged with whatever loss resulted on account of such negligence. Equity does not relieve one from the consequences of his own negligence and carelessness. On the other hand appellant made the cancellation and reissue

of the stock to others in the due course of business not knowing, and not having had an opportunity to discover, that the certificates had been stolen and the indorsements forged. The signatures to the indorsements were guaranteed in the usual way; and, so far as we are able to see, appellant was not guilty of carelessness and negligence. Certainly, when stock was presented to it duly indorsed with the signatures guaranteed, it was not called upon to make an investigation as to whether such stock had been stolen and the indorsements forged. If that burden rested upon a corporation that had issued a large amount of stock every time a certificate was presented duly indorsed for cancellation and reissue, it would indeed be a great and unjustifiable burden and one that would require them to spend large sums of money. We do not think, in the due course of business, it was required to go to the expense of making these investigations every time a certificate was presented for cancellation and reissue. Regarding both appellant and appellees as innocent parties appellees were to blame for this loss in the first instance and the loss should fall upon them.

On account of the error indicated the decree is reversed, and appellee's complaint is dismissed.

SMITH, J., concurs.