CANAL INSURANCE COMPANY *v.* FIRST NATIONAL BANK OF FORT SMITH, Arkansas

INTERNATIONAL HARVESTER CREDIT CORPORATION *v.* CANAL INSURANCE COMPANY

CA 79-6                                                        596 S.W. 2d 710

Opinion delivered September 5, 1979

[Rehearing denied October 3, 1979.]
[Certiorari to Supreme Court granted October 8, 1979.]
[Affirmed by Supreme Court April 14, 1980.]*

and released for publication May 7, 1980

*Canal Ins. Co. v. First Nat'l Bank of Ft. Smith, et al, 268 Ark. 356, 596 S.W. 2d 709.

*Hardin, Jesson & Dawson,* for appellant-appellee, International Harvester Credit Corporation.

*Shaw & Ledbetter,* for appellee, First National Bank of Fort Smith.

*Jones, Gilbreath & Jones,* for appellant-appellee, Canal Insurance Company.

GEORGE HOWARD, JR., Judge. This is an appeal[1] from a summary judgment rendered in behalf of First National Bank of Fort Smith against Canal Insurance Company for $2,-412.99; and a summary judgment in behalf of Canal Insurance Company against International Harvester Credit Corporation, under the terms of a purported "hold harmless agreement", for $2,412.99 plus an attorney's fee of $1,725.42. This proceeding is essentially two separate actions, but are interrelated. Consequently, the entire matter will be disposed of in this opinion.

The facts are not in dispute. However, the pertinent facts for a resolution of the issues tendered are: Canal Insurance Company, on January 24, 1974, issued an insurance policy to Jim Marler insuring a utility refrigeration trailer. On April 5, 1974, International Harvester Credit Corporation, the lienholder, was added as a loss payee by an endorsement to the policy.

Following an accident involving the trailer on August 18, 1974, Marler filed a claim with Canal for the damages sustained. On April 22, 1975, Canal issued its draft, No. 414449, for $2,412.99. The following language was printed on the face of the draft: "Upon Acceptance Pay To The Order Of Jim Marler" and "Payable Through the South Carolina National Bank, Greenville, South Carolina." Marler deposited the draft on May 5, 1975, in a checking account of Nationwide Refrigerated Express, Inc., maintained at First National Bank of Fort Smith.[2] First National permitted Marler to withdraw funds from the account, and moreover, the account was closed before First National received a reply to its tender of the draft to South Carolina National Bank for payment.

---

[1]This appeal was originally lodged in the Arkansas Supreme Court, but was transferred to this Court under Rule 29(3) of the Rules of the Arkansas Supreme Court.

[2]Marler was a stockholder as well as an officer of Nationwide Refrigerated Express, Inc.

On May 16, 1975, the draft was presented for payment, but was not accepted because Canal had issued a stop payment order. Other reasons asserted for nonacceptance were: the draft was improperly drawn, was improperly endorsed and was in a mutilated condition.

On August 12, 1975, Canal issued a substituted draft, No. 420392, in the sum of $2,412.99, made payable to Marler and International, after Canal realized that International's name, as loss payee, was inadvertently omitted from the first draft and, furthermore, Marler had refused to respond to Canal's request for return of the draft for cancellation. The second draft was forwarded to First National, but the instrument was never presented for payment because International refused to endorse the substituted draft contending that it was entitled to a draft exclusively as a single interest payee. International, in the meantime, had repossessed the trailer; and the outstanding balance remaining on the trailer was $12,554.28.

On September 2, 1975, Canal issued its third draft for $2,412.99 made payable to International only after International had executed, approximately one week earlier, a "hold harmless agreement" purporting to indemnify Canal "from any further claim" and to "defend any suit or go to any trouble or expense to protect the Canal Insurance Company from any further claims under the above-referred policy."

First National filed its lawsuit against Canal on December 30, 1975, seeking judgment for $2,412.99. Canal informed International of the action on January 15, 1976, and requested International to intercede in the lawsuit and defend Canal's interest. International denied any obligation to respond to Canal's request contending that the hold harmless agreement did not provide for a defense "to any action as a result of the alleged wrongfully stop-payment of a draft issued in settlement of the subject claim."

On February 12, 1976, Canal filed its answer to First National's complaint and a third party complaint against International for judgment of its expenses incurred in de-

fending the action and for whatever sum of money Canal may be required to pay First National.

## THE DECISION

### I.

### THE JUDGMENT IN FAVOR OF FIRST NATIONAL AND AGAINST CANAL INSURANCE COMPANY

Canal argues rather persistently that its initial draft, No. 414449, made payable to Jim Marler only was not a negotiable instrument inasmuch as the draft was conditional "Upon Acceptance" and "Payable Through the South Carolina National Bank, Greenville, South Carolina." Consequently, argues Canal, Canal had no affirmative obligation under the instrument until Canal had accepted the draft and, furthermore, until acceptance, Canal had every right to stop payment on the draft. Accordingly, reasons Canal, the trial court erred in rendering a judgment against it in behalf of First National.

In support of this position, Canal cites, among other things, Ark. Stat. Ann. § 85-3-410(1) which provides essentially that "acceptance" is the drawee's signed engagement to honor the draft as presented; and there must be some manifestation of the drawee's acceptance on the draft.

Canal further contends that the language "Payable Through the South Carolina National Bank, Greenville, South Carolina" on the face of its initial draft simply designated South Carolina National Bank as a collecting bank without authority to pay the draft. Consequently, the bank is not a drawee and is not ordered or even permitted to pay the instrument out of any of the drawer's funds, if any, on hand. Canal relies on Ark. Stat. Ann. § 85-3-120 to support its argument here. Ark. Stat. Ann. § 85-3-120 (Add. 1961), in material part, provides:

> An instrument which states that it is 'payable through' a bank or the like designates that bank as a

collecting bank to make presentment but does not of itself authorize the bank to pay the instrument.

While Canal's argument is interesting and on first blush seems plausible, after close scrutiny of the circumstances existing in this case and consideration of the applicable law, we are not persuaded by Canal's argument and it is, therefore, rejected.[3]

In *First National Bank of Huttig v. Rhode Island Insurance Company*, 184 Ark. 812, 43 S.W. 2d 535 (1931), the Arkansas Supreme Court, in disposing of an identical issue under § 7896, Negotiable Instrument Act of Crawford and Moses' Digest, made the following observation:

> . . . A bill of exchange drawn by the maker upon himself is in legal effect a promissory note, and cannot be countermanded. Where a bill of exchange is drawn by a corporation upon itself, the instrument may be treated as an accepted bill or as a promissory note at the election of the holder.
>
> .  .  .
>
> In the present case, the instrument which is the basis of the suit was in form a bill of exchange. It was drawn by the corporation Rhode Island Insurance Company, under the signature of its president upon itself. In other words, it was a bill of exchange drawn by the corporation through its proper officer upon itself, and was not therefore subject to countermand.
>
> .  .  .
>
> It is claimed, however, that it was conditional because of the words 'upon acceptance' in it. . . . [T]hese words had no legal effect on the instrument. They were in the instrument where it was signed by the president of the corporation, and the very act of drawing

---

[3]Canal has stated in its brief that it had not been able to locate any Arkansas case law on the point. We have found an Arkansas case, discussed hereinafter, that seems relevant to the issue before us.

the bill is deemed an acceptance of it, and the holder may treat it as an accepted bill of exchange or as a promissory note.

In *Falk's Food Basket* v. *Selected Risks Insurance Company,* 214 Pa. Super. 522, 257 A. 2d 359 (1969), the Superior Court of Pennsylvania, in dealing with an identical issue under the Uniform Commercial Code, made the following statement:

'Upon Acceptance' does not destroy the negotiability of this instrument because it is only a restatement of an 'implied or constructive condition' of any draft or check, which must be accepted to charge the drawee. 'A promise or order otherwise unconditional is not made conditional by the fact that the instrument (a) is subject to implied or constructive conditions;[4] . . . However, the Code provides, 'A draft drawn on the drawer is effective as a note.[5] Where a draft is drawn by one person on himself or itself, which has the effect of a promissory note or an accepted bill of exchange, it is considered to be accepted by the very act of issuing it and presentment and acceptance are not necessary to make the draft a liability of the drawer to the payee or holder. . . . The use of 'Upon Acceptance' on this note is superfluous for this additional reason.

. . .

Since 'Upon Acceptance' and 'Payable Through' do not destroy this instrument's negotiability and there is no other allegation in the record that the appellee had any other notice of a defense against the instrument, appellee is a holder in due course.[6]

In *Bailey* v. *Palster,* 468 S.W. 2d 105 (Tex. 1971), the Court held that where an insurance company settled a claim and issued a draft upon itself, in its capacity as drawer, use of the words "upon acceptance" in the draft did not give the drawer

---

[4]*See:* Ark. Stat. Ann. § 85-3-104(1) (Add. 1961).

[5]*See:* Ark. Stat. Ann. § 85-3-118(a) (Add. 1961).

[6]*See:* Ark. Stat. Ann. § 85-3-302(1)(c) (Add. 1961)

the right to stop payment.

In *General Motors Acceptance Corp.* v. *General Accident Fire & Life Assurance Corp.*, 67 N.Y. Supreme Court A.D. 2d 316 (1979), in reviewing the legal effect of a draft providing "payable through the First Pennsylvania Bank" stated, among other things:

> Because this draft was drawn by defendant on itself, payable through the First Pennsylvania Bank, defendant contends that the situation is the same as though it were only the drawee of the draft, and it is not liable thereon because it did not accept it . . . but, instead, stopped payment on the draft; . . .

> .  .  .

> . . . Upon issuance of the draft the drawer engages that upon its dishonor and appropriate notice and protest, he will pay it, unless he notes thereon that it is drawn without recourse . . . The draft in this case was not drawn without recourse and, since there was no drawee (other than defendant itself) who accepted responsibility for it, defendant remains liable thereon . . . [7]

> .  .  .

> . . . After defendant stopped payment on the draft it remained liable on it to plaintiff as a holder in due course . . .

*See Also:* 11 Am. Jur. 2d, Section 23, page 52, Bills and Notes; 10 C.J.S., Section 171, page 646, Bills and Notes, where it is provided that where in a bill the drawer and drawee are the same person, the holder may treat the instrument, at his option, either as a bill of exchange or a

---

[7]*See:* Ark. Stat. Ann. § 85-3-413(2) (Add. 1961). *See: Spencer* v. *Halpern*, 63 Ark. 108, 37 S.W. 712, where the Arkansas Supreme Court recognized at an early date that one desiring to escape liability on a bill may do so by inserting the words "without recourse."

promissory note; and, accordingly, an acceptance is not necessary on the part of the drawer-drawee.

We conclude that Canal remained liable on its initial draft made payable to Jim Marler only although a stop payment order was issued. As maker and drawee of the instrument, Canal could not countermand the draft. Moreover, where, as here, a bill of exchange is drawn by the maker upon itself, the mere execution of the bill is deemed an acceptance of it and the holder has an option to treat the draft as an accepted bill or as a promissory note.

It is plain that Canal's draft contained all the elements of negotiability and was not drawn without recourse. The record is deficient of any proof that First National had notice of any defense against the instrument. First National was, indeed, a holder in due course. Accordingly, the judgment of the trial court in behalf of First National is affirmed.

## II.

## THE JUDGMENT IN FAVOR OF CANAL AND AGAINST INTERNATIONAL

It is undisputed that International, by an endorsement to the policy issued by Canal, became a loss payee under the policy on April 5, 1974, approximately four months prior to an accident on August 18, 1974, resulting in the loss sustained by the insured. However, on April 22, 1975, Canal, without the knowledge of International, delivered to Jim Marler only, its draft to cover the loss. Moreover, it is plain that International did not receive knowledge of Canal's initial draft to Marler until September 2, 1975, approximately one week after International had executed the hold harmless agreement prepared by Canal.

International argues, on the one hand, that the language contained in the hold harmless agreement means that Canal was to be indemnified or held harmless "from any further claim" relating to any affirmative action on the policy itself and does not require International to respond to an action based on negligence or negotiable instrument errors.

It is clear that after Canal issued its initial draft to Jim Marler only, Canal sought to correct the error by requesting Marler to return the draft for cancellation, and finally, Canal stopped payment on the instrument. Canal issued its second draft made payable to Marler and International on August 12, 1975, and when International refused to endorse it, Canal issued its third draft to International only.

Canal, on the other hand, argues that its third draft to International only was delivered in reliance on the hold harmless agreement and *"but for"* the hold harmless agreement, the draft to Inernational would not have been issued.

We are persuaded that the hold harmless agreement did not contemplate the action instituted by First National against Canal which is predicated upon the nonpayment of the initial draft as a consequence of the issuance of a stop payment order by Canal. It must be remembered that Canal's dealings with First National were prior to the execution of the hold harmless agreement and it is apparent that the hold harmless agreement is prospective in scope and purpose. First National had no claim under the policy, and First National is not even mentioned in the hold harmless agreement or the policy. The hold harmless agreement provides explicitly that International is to hold Canal harmless and provide for a defense to "any further claims under the above referred policy."[8]

Accordingly, we reverse the trial court and the action i dismissed with cost assessed against Canal.

HAYS and NEWBERN, JJ., dissent.

M. STEELE HAYS, Judge, dissenting. I respectfully dissent to the decision of the majority on both counts. I would

---

[8]A contract must be strictly construed against the party preparing it. *Foster* v. *Universal C.I.T. Corp.*, 231 Ark. 230, 330 S.W. 288 (1959). Where one of two innocent persons must suffer, the one who puts it in power of a third person to perpetuate the act causing the loss should suffer the loss. *Arkansas Power & Light Co.* v. *Bauer-Pogue & Co., Inc.*, 194 Ark. 1002, 110 S.W. 2d 529; *Commercial Credit Company* v. *Hardin*, 175 Ark. 811, 300 S.W. 434.

reverse as to First National Bank and affirm in part as to the judgment in behalf of Canal against International.

I believe that the majority is overlooking a long-standing and recognized practice, particularly with the insurance industry, of issuing drafts bearing the words "upon acceptance" and "payable through" a specific bank and that such instruments are not treated as negotiable until actually accepted by the issuer. The reasons for this treatment of such drafts are practical to the problems of covering drafts in settlement of claims being issued at many separate branches across the country and providing efficiently, at the paying end, the necessary funds to cover the drafts being processed. I believe the Uniform Commercial Code framers recognized the custom and made allowance for it by the language of and comment to § 85-3-120.

The record is silent, but I suspect this matter is before us only because appellee inadvertently treated the draft deposited by Marler as a cash item and immediately credited the account, rather than treating it conditionally. Its normal practice, I believe, would be to forward the draft for collection before crediting the account.

The effect of the majority opinion is to invalidate a practice I consider to be widespread and of near universal acceptance, with nothing to replace it — all for no good reason. I recognize that there are decisions from other jurisdictions, which the majority cites, that reach a different conclusion; however, the opinions of Pennsylvania and New York are not binding upon us and, in this instance, are not even persuasive, where they contain nothing to commend them except that they exist. Nor am I willing to impose what I hold to be an extreme alteration of a custom and practice of commerce on the strength of an arcane decision handed down half a century ago, more than forty years before the adoption of the Uniform Commercial Code and decades before it was even conceived of. I refer to the case of *First National Bank of Huttig v. Rhode Island Insurance Company*, 184 Ark. 812, decided in 1931.

As I interpret the majority opinion, the determining fact-

or is that where the drawer and drawee are the same person (as in the case before us) the words "upon acceptance" have no meaning and the issuer of such a draft is immediately liable upon the instrument to a holder in due course. Yet the opinion cites dicta from decisions, including an early decision of this state, which permit the same result by using different words, i.e., "without recourse." Thus a drawer and drawee can be identical and accomplish the same result if different words are used. I believe that in practice the words "upon acceptance" have been treated as having the same effect. If this is so, why insist on substituting two words more to our own liking, when those involved in this area of commercial dealing have come to recognize two different words as achieving the same result, and the practice is not objectionable under the U.C.C.?

As to the agreement to hold harmless, I believe that both Canal and International Harvester had full awareness of the circumstances when the agreement was demanded by Canal as a condition to immediate payment to International Harvester as a single payee. It was to protect itself from precisely the eventuality with which it was later confronted that Canal insisted on the agreement and International Harvester simply bought the risk, foregoing its option to file suit. The rule that ambiguous language in an agreement is to be construed most favorably to the party who did not draft the agreement is not intended to apply to the situation presented in the case before us.

I am authorized to state that Judge Newbern joins in this dissent.