Robert O. and Katherieen
**GOLDSMITH, Appellants,**

v.

**DIAMOND SHAMROCK
CORPORATION,
Appellee.**

No. 84–2269.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1985.

Decided June 28, 1985.

Jan K. Nielsen, Fort Smith, Ark., for appellants.

G. Alan Wooten, Fort Smith, Ark., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Robert and Katherieen Goldsmith brought suit against Diamond Shamrock Corporation seeking payment of a draft given to them by Diamond upon execution of an oil and gas lease. They now appeal from a judgment in favor of Diamond entered on a jury verdict following a second trial. The Goldsmiths obtained a verdict in their favor at the first trial, and Diamond filed only a motion for judgment notwithstanding the verdict. The district court, however, granted Diamond a new trial on the ground that Diamond received inadequate notice that, under the Goldsmiths' theory of the case, it would bear the burden of proof. The Goldsmiths argue that the district court erred in thus granting a new trial, either in that it acted beyond its authority or in that it abused its discretion. We reverse and remand with directions that the district court enter judgment on the verdict rendered in the first trial in the amount of $35,775.

In March 1982 Diamond Shamrock Corporation, through its agent Steve Brown, sought a "top lease" of oil and gas rights to certain property owned by Robert and Katherieen Goldsmith, such lease to take

effect on August 31, 1982, when the existing lease of such rights to another oil company expired. The top lease was executed on April 5, 1982, at which time Diamond gave the Goldsmiths a signing bonus of $39,750 in two drafts. The first draft of $3,975 was due immediately and was paid by Diamond while the draft for the remaining ninety percent was due November 30, 1982. The Goldsmiths testified that they had understood payment of the second draft to be contingent only upon the expiration of the existing lease with no drilling by that oil company. Brown, however, testified that the agreement executed had just been an option for a lease such that Diamond was obligated to pay the second draft only if, within sixty days of the August 31 expiration of existing lease, it decided to pick up its option.

When Diamond ultimately refused to pay the second draft, the Goldsmiths filed this action seeking the amount due of $35,775.[1] The trial was held on May 7, 1984. Under the Goldsmiths' theory of recovery, introduction of the draft into evidence established their entitlement to the proceeds thereof and shifted the burden to Diamond to prove an affirmative defense to payment.[2] Diamond, however, requested that the jury be instructed that the Goldsmiths had the burden of proving their right to the $35,775 under the lease agreement. The district court accepted Diamond's position, found the lease agreement ambiguous so as to give rise to a jury question as to its meaning, and submitted the interrogatory "Are plaintiffs entitled to the proceeds of the draft according to the agreement of the parties?"

The jury answered this question "yes," and Diamond the next day filed a motion for judgment notwithstanding the verdict on the ground that, even assuming ambiguity, no possible interpretation of the agreement would support the result sought by the Goldsmiths. About two weeks later, however, the district court wrote a letter to the parties saying it had become "somewhat convinced" that the case should have been submitted in the manner urged by the Goldsmiths. The court suggested that no matter how the agreement were interpreted Diamond would not thereby have established an affirmative defense, and it asked the parties to file supplemental briefs on how the court's decision on the law thus should affect Diamond's motion for judgment notwithstanding the verdict. Diamond in its response for the first time argued that if the burden of proof were placed on it it was entitled to a new trial because it had inadequate notice of that burden and would have presented its case differently.

The district court again accepted Diamond's position. On June 22, 1984, it issued an order granting the new trial, and in a letter to the parties it explained,

> In any event, the court believes that the case might very well have been tried in a different manner and different evidence adduced if it had proceeded in what the court now believes to be the proper manner. For this reason, the court simply does not believe that it is "fair" to simply overrule the motion for a judgment n.o.v. and allow the motion to stand.

The court stated that the Goldsmiths' contentions as to the effect of the draft and the placement of the burden of proof were not obvious from their complaint but only became apparent when they submitted their proposed instructions. The court then addressed its remedy:

> Rule 50 clearly provides that the court has discretion to, in effect, treat the motion as a motion for a new trial and order one rather than grant judgment if it believes that the defect in the proof might be remedied on a second trial, or if needed evidence was ruled out by some error of the court. See discussion in 9 Wright

---

1. The action was filed in state court but was removed to federal district court on the ground of diversity. *See* 28 U.S.C. § 1441 (1982).

2. The Goldsmiths were relying on *Canal Ins. Co. v. First Nat'l Bank,* 268 Ark. 356, 596 S.W.2d 709 (1980) (adopting opinion of Court of Appeals, 266 Ark. 1044, 596 S.W.2d 710 (1979) ).

& Miller, *Federal Practice and Procedure: Civil* § 2538. If the law is, as we now believe it to be, that [Diamond] is required to show a defense to payment or lose, the court believes that it was only fair that [Diamond] be so advised early in the trial so that [it] could attempt to meet that burden. A new trial will be granted and [Diamond] will be given an opportunity to do so.

Finally, as an additional ground for the new trial, the district court declared the verdict against the weight of the evidence.

At the second trial the jury, although instructed that Diamond had to prove an affirmative defense to payment of the draft, found for Diamond, and the Goldsmiths appeal from the judgment entered on that verdict. As a threshold matter we observe that Diamond has not argued before us that, should we find the grant of a new trial improper, it is still entitled to judgment notwithstanding the verdict in the first trial. We may not consider issues not raised on appeal. *E.g., Borough v. Duluth, Missabe & Iron Range Railway,* 762 F.2d 66, 68 n. 1 (8th Cir.1985); *Kizzier Chevrolet Co. v. General Motors Corp.,* 705 F.2d 322, 325 n. 2 (8th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 153, 78 L.Ed.2d 141 (1983).

## I.

■ The district court in finding authority in Rule 50 of the Federal Rules of Civil Procedure for its grant of a new trial apparently relied upon the language that "[i]f a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed." Fed.R. Civ.P. 50(b). This language, however, by its very terms gives a court discretion to order a new trial absent a motion therefor only where the moving party otherwise would have been entitled to judgment notwithstanding the verdict. *Peterman v. Chicago, Rock Island & Pacific Railroad,* 493 F.2d 88, 92 (8th Cir.) (citing *Jackson v. Wilson Trucking Corp.,* 243 F.2d 212 (D.C. Cir.1957)), *cert. denied,* 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974); *see* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2538, at 606 (1971). The discretion thus granted is addressed to the protection of the party whose judgment can be set aside to allow that the failure of proof, when only technical or when caused by error of the court or change in the law, be corrected. *E.g., Lucas Hoist & Equipment Co. v. Eaton Corp.,* 76 F.R.D. 661 (W.D.Pa.1977) (when law on burden of proof was overruled during pendency of posttrial motions such that defendant became entitled to judgment notwithstanding the verdict, district court had authority instead to order new trial to allow plaintiff the opportunity to meet new burden).[3]

■ When, as here, the district court believes the moving party not entitled to judgment notwithstanding the verdict, respect for the role of the jury requires strict compliance with the limits established in the Federal Rules of Civil Procedure as to when and why such a verdict otherwise may be disturbed. *Jackson,* 243 F.2d at 217. Thus, we have held that a district court in such circumstances lacks the power to grant a new trial unless it acts on the basis of a motion of a party pursuant to Rule 59(b) of the Federal Rules of Civil Procedure or sua sponte within ten days pursuant to Rule 59(d) of the Federal Rules of Civil Procedure. *Peterman,* 493 F.2d at 91; *see* 9 C. Wright & A. Miller, *supra,* at

---

**3.** The district court's second letter makes clear that it acted on the basis of perceived prejudice to Diamond rather than to the Goldsmiths. For additional material on Rule 50(b) discretion as protecting the party whose judgment may be set aside, see *Jackson v. Wilson Trucking Corp.,* 243 F.2d 212, 214–15 (D.C.Cir.1957) (citing Proceedings of the Symposium at New York City on the Federal Rules 283–84 (1938) (statement of William D. Mitchell, Rules Advisory Committee Chairman)). *Cf. Neely v. Martin K. Eby Constr. Co.,* 386 U.S. 317, 327, 87 S.Ct. 1072, 1079, 18 L.Ed.2d 75 (1967) (options of courts of appeals upon setting aside jury verdicts for insufficient evidence); *see generally Cone v. West Virginia Pulp & Paper Co.,* 330 U.S. 212, 215, 67 S.Ct. 752, 754, 91 L.Ed. 849 (1947) (discussing operation of Rule 50(b)).

606–07. Neither avenue was available to the district court in this case.

Diamond suggests two courses by which we might avoid this result. First, Diamond urges that we adopt the argument of Chief Justice (then Judge) Burger in his dissent in *Jackson*, 243 F.2d at 217, that a party moving only for judgment notwithstanding the verdict and found not entitled thereto may still be granted a new trial on the basis that the verdict was against the weight of the evidence. *See* 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 50.11, at 50–99 & n. 8 (1985). While we found it unnecessary to reach this argument in *Peterman* because the new trial order there was based only on instructional error and not, as here, on weight of the evidence in the alternative, *see* 493 F.2d at 93, we observe that then Judge Burger's position has been rejected by two other circuits, *Kain v. Winslow Manufacturing*, 736 F.2d 606, 608–09 (10th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1360, 84 L.Ed.2d 381 (1985); *Alderman v. Tandy Corp.*, 720 F.2d 1234, 1236–37 (11th Cir.1983), and by a prominent treatise, 9 C. Wright & A. Miller, *supra,* at 607 n. 8, as well as by the majority in *Jackson, supra.* Diamond cites no case decided in conformity with the rule it urges, and we decline to extend the requested authority to the district court here.

Second, Diamond argues that the court in this case could properly have granted a new trial sua sponte, even though it acted more than six weeks after the jury returned its verdict, because judgment was never actually entered so as to trigger the ten-day limitation of Rule 59(d). This argument is unpersuasive for two reasons. First, the district court was specific in granting the motion on the authority of Rule 50(b). Had the court intended to base

its authority on Rule 59(d), we are satisfied that it would have so stated.

In addition, we are hesitant to approve the open-ended approach to Rule 59(d) implicit in Diamond's argument. The provision on entry of judgment upon a special verdict speaks of the court "promptly approv[ing] the form of the judgment," Fed. R.Civ.P. 58(2), and apparently does not contemplate delays for the purpose of extending the period available for posttrial relief. Such a practice would nullify the time limitations in Rules 59(b) and (d) and is not necessary because those and other provisions are adequate to protect the rights of parties against whom judgment is entered. 6A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 58.04[2], at 58–36 to 58–40 (1984); *cf. Tarlton v. Exxon*, 688 F.2d 973, 978–79 (5th Cir.1982) (Rule 59(d) is designed primarily to correct immediately apparent injustices occasioned by jury verdicts; pendency of motion for judgment notwithstanding the verdict does not toll the running of the ten-day period in which a court can order a new trial sua sponte), *cert. denied,* 463 U.S. 1206, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). Furthermore, such a practice would be contrary to the purpose of Rule 58 of encouraging prompt entry of judgment so as to avoid prejudice to the rights of the parties. 6A J. Moore, J. Lucas & G. Grotheer, *supra,* at 58–37 to 58–50; 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2781, at 9 (1973).[4]

## II.

In addition, assuming that the district court had the authority to grant the new trial, the exercise of such authority in this case was an abuse of discretion. *See Ryan by Ryan v. McDonough Power Equipment*, 734 F.2d 385, 387 (8th Cir.

---

4. While we recognize the general rule that in the absence of entry of judgment the time for appeal will extend indefinitely, *e.g., Bandag, Inc. v. Al Bolser Tire Stores,* 719 F.2d 392, 393 (Fed.Cir. 1983); *Gregson & Assocs. Architects v. Virgin Islands,* 675 F.2d 589, 593 (3d Cir.1982) (per curiam), we believe that that situation is distinguishable. Another purpose of Rule 58 was to increase certainty as to the running of the time

for appeal, *see generally Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam) (citing Rules Advisory Committee notes), and while the technical requirements surrounding entry promote this purpose, they are not relevant to the concerns with finality and respect for juries implicit in the limits of Rule 59(d) as to when a court may upset a verdict on its own motion.

1984); *Commercial National Bank v. Missouri Pacific Railroad,* 631 F.2d 563, 565 (8th Cir.1980). The instructional error on which the new trial order was based was invited by Diamond through its requested jury instructions, and courts generally find no ground for reversal when the instructions given were consistent with the position of the party seeking relief. *Federal Crop Insurance Corp. v. Hester,* 765 F.2d 723 (8th Cir.1985); *Hampson v. Bucyrus-Erie Co.,* 464 F.2d 562, 563 (3d Cir.1972) (per curiam); *cf. Mercer v. Theriot,* 377 U.S. 152, 154, 84 S.Ct. 1157, 1159, 12 L.Ed.2d 206 (1964) (per curiam) (improper admission of hearsay evidence not reversible error when party seeking relief not only didn't object but elicited same evidence in his examination of the witness); *United States v. Truitt,* 440 F.2d 1070, 1071 (5th Cir.) (per curiam) (party cannot raise as error admission of evidence that he himself introduced as joint exhibit with the prosecution), *cert. denied,* 404 U.S. 847, 92 S.Ct. 150, 30 L.Ed.2d 84 (1971). It would be even more anomalous to hear Diamond's complaint as the error was in its favor.

■ Furthermore, the conclusion of the district court that Diamond was prejudiced at trial because it had inadequate notice of its burden of proof is contrary to the record as we understand it. While the parties failed to exchange pretrial conference information sheets and proposed jury instructions fourteen and ten days before trial respectively, as required by local court rule, these documents were exchanged the Friday before a Monday trial. Such notice should have been ample for an uncomplicated trial in which all the evidence was presented in half a day and the testimony itself ran just forty-seven pages in the transcript. In addition, one response on Diamond's pretrial conference information sheet suggested that the corporation was in fact aware that the Goldsmiths would argue that the draft itself established their right to the $35,775.[5] The Goldsmiths pre-

vailed at the first trial despite having to bear a heavier burden of proof than was proper, and we cannot see in that result any prejudice to Diamond sufficient to warrant a new trial.

■ Finally, we believe the district court also abused its discretion in granting a new trial on the alternate ground that the verdict was against the weight of the evidence. In *Fireman's Fund Insurance Co. v. Aalco Wrecking Co.,* 466 F.2d 179, 187 (8th Cir.1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973), we emphasized that a verdict to be disturbed must have been against the "clear weight," "overwhelming weight," or "great weight" of the evidence. Such a determination, we stressed, involves a judicial balancing by the district court as to whether the first trial resulted in a miscarriage of justice. The district court's abbreviated treatment of this question in this case does not demonstrate that it engaged in an appropriate balancing or found a miscarriage of justice, or that it in any meaningful way applied the teaching of *Fireman's Fund.*

Furthermore, the court in its first letter said it felt the error in the instructions would make no difference because the "odds" were that the jury would find the draft payable, and the court in its second letter opined that there was an excellent chance that the result would be the same in the second trial. The case turned on some conflicts between the testimony of the one witness called by the Goldsmiths and the one witness called by Diamond. The choice between the two stories was essentially a credibility determination for a jury rather than a weight of the evidence issue. *See McGee v. South Pemiscot School District R–V,* 712 F.2d 339, 344 (8th Cir.1983). These circumstances, in our view, undermine the court's action in granting a new trial on the ground that a finding that the

---

5. The Goldsmiths, on their motion for reconsideration of the new trial order, submitted to the district court an affidavit that counsel had discussed the Goldsmiths' position as to the burden of proof some weeks before trial. We do not find it necessary, however, to consider this statement to reach our conclusion.

draft was payable was against the weight of the evidence.

The judgment is reversed and remanded to the district court with directions to enter judgment on the verdict returned in the first trial in favor of the Goldsmiths in the amount of $35,775 plus interest.