KEET-ROUNDTREE SHOE COMPANY, Appellant, v. LISMAN et al.; LUTTER, Interpleader.

### Division One, March 30, 1899.*

Attachment: FRAUD ON CREDITORS: PAYMENT BY CHECKS.    Where the interpleader bought the goods of defendants, and paid for them by a check drawn by a Wisconsin bank on a bank in Illinois, payable to interpleader's order, and by him indorsed and delivered to defendants and it passed entirely beyond his control, and he was by them put into possession of the goods, and defendants' creditors suspected fraud, and inquired of him concerning the manner of his payment for the stock of goods, and at the request of defendants he declined to inform them about the check, which was afterwards paid, it will be held that the giving of the check was a payment, and that the interpleader was not guilty of fraud on the rights of defendants' creditors.

*Appeal from Howell Circuit Court.*—HON. W. N. EVANS, Judge.

AFFIRMED.

G. M. SEBREE and J. S. FARRINGTON for appellant.

(1)    This case should not have been submitted to the jury, except on a peremptory instruction to find for plaintiff; interpleader knew of the fraud in the sale in time to stop the payment of his draft.    It was his duty to do so.    Arnholt v. Hartwig, 73 Mo. 485; Dougherty v. Cooper, 77 Mo. 532;

*NOTE.—Decided February 15, 1899.  Motion for rehearing filed.  Motion overruled March 30, 1899.

Young v. Kellar, 94 Mo. 581. (2) The plaintiffs instructions number 13, 14 and 15 correctly declare the law and should have been given. Interpleader had no right to assist defendants to get their draft cashed; it was his duty to stop payment. Dougherty v. Cooper, 77 Mo. 532; Young v. Kellar, 94 Mo. 581; Wetmore v. Woods, 62 Mo. App. 265; Greenlee v. Marquis, 49 Mo. App. 294. (3) The failure, of a party against whom fraud is charged, to produce as witnesses, persons who are alleged to have participated in the fraud, if within reach, will raise a presumption in favor of the charge, and plaintiff's instruction number 18 should have been given. Bump on Fraud. Conv. (3 Ed.), sec. 65; Baldwin v. Whitcomb, 71 Mo. 651; Cass Co. v. Greene, 66 Mo. 589. (4) Instruction number 6 given on behalf of interpleader tells the jury that the draft for $2,200, was a payment for that amount. This is not the law. An unpaid check is not a payment until presented and paid, and the draft in this case was nothing more than a check. Tiedeman on Com. Paper, sec. 456; Bank v. Bank, 58 Mo. App. 17; Albers v. Bank, 85 Mo. 173; George v. Rhodes, 66 Ill. 277; Small v. Mining Co., 99 Mass. 277. An order drawn by a bank on another bank for the payment of a sum certain to a named person and payable on demand is a check. State v. Vincent, 91 Mo. 662.

A. H. LIVINGSTON for respondent.

(1) There is no testimony that tends to show that respondent knew of any fraud on part of Lisman & Ramsey, nor were the facts sufficient to create a suspicion of fraud, nor is the testimony sufficient to show fraud on the part of Lisman & Ramsey. Baker v. Harvey, 133 Mo. 653; Dougherty v. Cooper, 77 Mo. 531; Van Raalte v. Harrington, 101 Mo. 602; State to use v. Mason, 102 Mo. 374; Sammons v. O'Neil, 60 Mo. App. 530; Bank v. Worthington, 145 Mo. 91.

(2) The sale was absolute and complete, and the payment then and there made in full. The draft even if it be so called, was negotiable under the laws of this State and the law merchant. Shoe Co. v. Crosswhite, 124 Mo. 34. (3) Instructions numbers 13, 14 and 15, asked by the appellant and refused are not the law, and were properly refused. There is no rule of law that goes so far, and the cases cited, in no wise sustain the proposition in such instructions. (4) Appellant's instruction number 18 was properly refused. The proposition therein contained has no application whatever to the facts of this case. The burden is on the attaching creditor to establish the fraud. Albert v. Besel, 88 Mo. 150; Martin v. Fox, 40 Mo. App. 664. Appellant's position on this point is peculiar to say the least of it. The witness Ramsey was present in court in obedience to a subpoena on part of appellant, was sworn as one of his witnesses. Appellant then offers to read his deposition. This of course he could not do. He fails to call his witness, and then asks the court to declare that a presumption of fraud is raised against us because we failed to introduce his witness. The witness was accessible to either party, therefore no presumption of fraud arises from a failure to introduce him. Bank v. Worthington, 145 Mo. 91; Kentner v. Verwig, 130 Mo. 196.

VALLIANT, J.—In September, 1895, plaintiff began suit against defendants in the circuit court of Howell county on an open account, in aid of which an attachment issued, under which the sheriff seized the stock of merchandise in question, whereupon Lutter filed a statutory interplea claiming that the attached property belonged to him. Plaintiff by answer denied Lutter's title and averred that the goods had been transferred to him by defendants to defraud their creditors, and that Lutter knew it at the time. The case was tried on that issue and the trial resulted in a

verdict and judgment for the interpleader.   Plaintiff in due
time filed a motion for a new trial which was overruled, bill
of exceptions filed and the cause brought here on appeal.

Upon the trial the interpleader introduced evidence
tending to prove that at the time of the purchase of the stock
of goods by him from defendants they owed him $1,600,
for money loaned, which was evidenced by their note then
due; that in payment for the goods he delivered them their
$1,600 note and $550 in cash and a check for $2,200 dated
July 16, 1895, drawn by First National Bank of Darlington,
Wisconsin, on Commercial National Bank of Chicago, to the
order of E. A. Lutter, the interpleader, and by him indorsed
and delivered to defendants; that the value of the stock was
$5,000 to $6,000; that they first offered it to him at $5,000
but the price finally agreed on was $4,350, which was paid
as above stated.   That at the time of the purchase inter-
pleader had no notice of any intent on the part of defend-
ants to defraud their creditors if there was such intent; that
immediately after the purchase interpleader took possession
with a view of continuing the business, and was so in posses-
sion when the sheriff seized the goods under the attachment
in this case.

On the part of the plaintiff the evidence tended to
prove that defendants at the time of the sale owed about
$5,000 for merchandise debts, and the next day after the
sale notified their creditors that they had sold out and offered
to settle in full at fifty cents on the dollar; that two days
after the sale the plaintiff and one or two other mercantile
creditors sent representatives to Willow Springs, which was
the scene of the business, to investigate the matter.   At this
time the defendants still held the $2,200 check, and inter-
pleader knew it, but they requested him to say nothing to
the representatives of the creditors about it, for fear they
would interfere with the collection; that in compliance with
this request the interpleader declined to give the creditor
any information on the subject.   The check was cashed in

Chicago several days after and defendants received the money.

Appellant makes several assignments of error, but the only one which is seriously insisted upon is the action of the court in refusing to treat the omission of interpleader to give information to the creditors about the $2,200 check, and failing to stop the payment of the check after notice that creditors suspected fraud, as evidence of fraud on his part, or rather as evidence of his participation in the alleged fraud of the defendants.

The concluding paragraph in the brief of the learned counsel is: "If it is the law that the mere giving of this draft was a payment, the action of the trial court in refusing the instructions of plaintiff was proper, and in conclusion we believe that this case should be settled finally by the decision of the Supreme Court; that no useful purpose can be attained by sending the case back for a retrial. If our theory is wrong, if interpleader was under no obligation to stop the payment of the draft, but had a right to assist the defendants in getting it cashed and the proceeds beyond the reach of their creditors, if nothing that he did or said could affect the validity of the transaction; we can not hope to get a verdict and, although there are some other errors, the judgment might as well be affirmed. If our position with reference to this draft is right, the undisputed evidence and the testimony of the interpleader entitles us to a reversal with directions to the circuit court to enter judgment."

The case will therefore be considered from that standpoint.

If the goods in question were sold in fraud of the creditors of the defendants, then, before the interpleader can be held to have acquired a valid title to them, it must appear that he bought and paid for them in good faith before he had notice of the fraud; or to state the proposition conversely, and nearer to the contention of appellant, though

he bought in good faith and without notice, yet if before he paid the consideration he had notice of the fraud his title can not prevail against the creditors. The cases cited by appellant's counsel support this proposition. [Arnholt v. Hartwig, 73 Mo. 485; Dougherty v. Cooper, 77 Mo. 528; Young v. Kellar, 94 Mo. 581.]

But the law declared in those decisions must be understood as applicable to the facts of those cases. In the first case a check was given by the purchaser for the purchase money, which by agreement of the parties was to be withheld for a time, and the bank was instructed by the purchaser not to pay it until further order; then after notice of the attachment, the purchaser ordered the bank to pay it. Thus the check was in the absolute control of the purchaser, and its payment depended entirely on his will. And the other two cases were similar in so far as the principle now under discussion was concerned.

But the check here in question was not one drawn by Lutter on his bank account, but one drawn by a bank in Wisconsin on a bank in Illinois, to Lutter's order, and by him indorsed and delivered to the defendants. It was a negotiable instrument [Shoe & Clothing Co. v. Crosswhite, 124 Mo. 34], and its indorsement and delivery to defendants was a payment *pro tanto* for the goods. What legal right did Lutter have to arrest the payment of that check, and how would he go about doing it, and what effect would it have had on the rights of the parties to this suit and the check itself, if he had succeeded in stopping payment? Suppose as soon as he was informed that the creditors of his vendors suspected fraud, he had written the Chicago bank informing it that he had indorsed and delivered the check in part payment of a stock of goods which thereupon was delivered to him and was still in his possession, and to which he was still claiming title, but that since his purchase certain creditors

of his vendors had notified him that they suspected the sale had been made to defraud them, and he therefore ordered that the check be not paid. Surely, if he had done that he would have done all that the plaintiff could have asked. But if he had done that he would have done a vain thing, because the Chicago bank would not have been justified in law in refusing to honòr the check of the Wisconsin bank on such an order, even if the check had been presented by the defendants themselves, much less when it was presented, as the evidence shows, by the Merchants' Loan & Trust Company, a subsequent indorsee through the Chicago clearing house, and bearing two other indorsements subsequent to that of Lutter.

The right of a first indorser is not different in respect to the point we are now considering from that of a second indorser. Suppose the check had originally been drawn to the order of another person, and he had indorsed and delivered it for value to Lutter, and Lutter had then used it as he did in this case, and had then written to the Chicago bank as above suggested, and suppose that bank had obeyed the order and refused to pay the check when presented, although it had funds of the drawer in its hands sufficient for that purpose, and suppose while the payment was being held up to await the result of the controversy, the Wisconsin bank had withdrawn its funds from the Chicago bank, and failed, what would have become of the liability of the first indorser? Or suppose the drawer had not withdrawn its funds, but during the suspense the Chicago bank had failed with sufficient funds to the credit of the drawer in its hands, what would have become of the liability of the drawer? These suggestions are made, and the subject is susceptible of many more of like character, to illustrate the difference between the rights of the parties respecting the bill of exchange in this case and those in the cases above cited. The law attaches peculiar significance to a foreign bill of exchange, as

this was.    The rights and liabilities of parties to such an instrument have been fixed mainly to secure their use with confidence in the commerce of the world; those rights and liabilities, though sometimes apparently resting on purely arbitrary rules, are established on sound commercial experience, and are fixed, lost or retained according as the technical rules of the law merchant are observed or disregarded.

The instructions asked by the plaintiff on this subject seem to present two theories, one that it was the duty of Lutter to have stopped payment of the check, and the other that he ought to have given the diligent creditors information so that they could have attached or stopped payment of it.    The two theories are inconsistent.    If Lutter had a right to stop payment of the check, according to one theory, it was because the consideration for his indorsement and transfer had failed and he was therefore entitled to the check himself, but if according to the other theory the creditors had a right to attach it, it could only be on the ground that it belonged to the defendants, and if the check belonged to defendants, the goods belonged to Lutter.

If the only complaint that the creditors have against Lutter is that he refused to give them information that would have facilitated them in finding assets of defendants on which to run attachments or garnishments, that complaint charges no breach of a legal duty and does not affect his title to the goods in question.

We do not declare the law quite in the fullness of the language of the learned counsel for appellant, that "interpleader was under no obligation to stop the payment of the draft, but had a right to assist the defendants in getting it cashed and the proceeds beyond the reach of creditors," because we do not think "that he had a right to assist the defendants in getting it cashed and the proceeds beyond the reach of creditors;" but we do hold that he was under no obligation to stop the payment of the draft because he had

no power to do so, and there is no evidence tending to prove that he did assist defendants in getting the check cashed and putting the proceeds beyond the reach of creditors.

The judgment of the circuit court is affirmed. All concur.