Prewitt v. Brown.

THEODORE A. PREWITT, Appellant, v. ALEXANDER H. BROWN, Garnishee of LOUIS A. COQUARD, Respondent.

St. Louis Court of Appeals, March 31, 1903.

1. **Judgment in Favor of Plaintiff: GARNISHMENT TO SATISFY SAME: PLEADINGS.** The evidence disclosed that the garnishee had bought, through an agent, defendant's membership in the St. Louis Stock Exchange for $3,500 and delivered his check for that amount to a firm of stock brokers on November 22nd, which was cashed by defendant November 30th. The garnishment was not served until November 25th, three days after the check was delivered. *Held,* that it was not the duty of the garnishee in the absence of fraud to attempt to recall the check after he had delivered it, although afterwards garnished, as the defendant was entitled to it.

2. ————: **PAYMENT BY CHECK: NO GARNISHMENT.** While it is true that, between the parties, a check does not constitute full payment, it is equally true that a purchaser in good faith, who has given his check to a seller for the price of the article bought, has so far paid for it that he is not subject to garnishment as the seller's debtor.

3. ————: **PAYMENT OF CHECK: FRAUD: NOTICE.** When the drawer of a check learns before payment that the vendor sold his property in fraud of his creditors, he is bound to stop payment, if the check is yet under his control.

Prewitt v. Brown.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*Alexander Young, Max F. Ruler* and *Upton M. Young* for appellant.

The court erred in rendering judgment for the defendant, instead of for the plaintiff. Johnson Brinkman Co. v. Bank, 116 Mo. 558; Hall v. Railroad, 50 Mo. App. 179; Weil v. Posten, 77 Mo. 284; Toothaker v. Allen, 41 Me. 324; Haley v. Railroad, 80 Mo. 112; Railroad v. Crane, 102 Ill. 249; 3 Am. and Eng. Ency. of Law, p. 1104.

*Seneca N. & S. C. Taylor* for respondent.

(1) A garnishee, can not, by reason of any process, be placed in a position different from that which he would have occupied had he been sued by the principal debtor. Funkhauser v. Evelynd, 3 Mo. App. 602; Scales v. Southern Hotel Co., 37 Mo. 524; Atwood v. Hale, 17 Mo. App. 81; Weil v. Tyler, 43 Mo. 582; McPherson v. Railroad, 66 Mo. 111; Holker v. Hennessy, 143 Mo. 86. (2) Garnishment is a legal proceeding, and not adapted to the ascertainment and settlement of equitable rights between the garnishee and defendant. Gregg v. Bank, 80 Mo. 256; Harman v. Menke, 73 Mo. App. 639. (3) A check given to a debtor for a chattel purchased, is so far payment as to discharge the drawer as garnishee of the seller, where process is served after delivery of the check but before present-ment, unless it is dishonored on presentment, and this is so even where the check is made payable to the seller. Weil v. Reiss, 167 Mo. 125; 2 Morse on Banks and Banking (3 Ed.), sec. 445; Getschell v. Case, 124 Mass. 366; Sage v. Burton, 84 Hun. 267; Hutter v. Wetsell, 17 Hun. 135; 18 Amer. and Eng. Ency. of Law (1 Ed.), sec. 174; Campbell v. Kanney, 19 R. I. 300; Jordan v. Jordan,

75 Maine 100; Benjamin on Sales (7 Ed.), p. 755, sec. 751. (4) A check given in payment and afterwards paid, becomes a valid payment as of the date of its receipt. 18 Amer. & Eng. Ency. of Law (1 Ed.), p. 174; Hutter v. Wetsell, 17 Hun. 135; Weil v. Reiss, 167 Mo. 125.

GOODE, J.—Plaintiff Prewitt obtained judgment in the circuit court of the city of St. Louis, October 16, 1900, against defendant Coquard for $3,140, and on November 25, 1901, had Brown garnished by an execution issued on said judgment. Brown was summoned to the February term, 1902, of the circuit court, at which term plaintiff filed interrogatories in the usual form.

The garnishee answered denying any indebtedness to Coquard and plaintiff filed a denial of the garnishee's answer, in which he charged that the garnishee was indebted to Coquard in the sum of $3,500, averring that the indebtedness accrued on account of the purchase by Brown of Coquard's membership in the St. Louis Stock Exchange, an association of persons engaged in buying and selling stocks and other securities.

The facts stated in plaintiff's denial are that on or about November 15, 1901, Coquard entered into an agreement with Brown to sell the latter his membership in the Stock Exchange for $3,500, and pursuant to said agreement the name of Brown was posted in the Exchange as an applicant for membership, and on or about January 15, 1902, he was elected a member in lieu of Coquard; that when Brown was summoned as garnishee on November 25, 1901, he had not paid Coquard for his membership, but still owed him the full price of $3,500 agreed to be paid. The denial further alleges that when the agreement for the sale of the membership was made, Brown deposited the purchase price either by check or in cash, in escrow, to be turned over to Coquard when Brown was elected a member of the Stock Exchange; that at the time the latter was gar-

nished said check or cash had not been turned over to Coquard, but was still under the control of the garnishee and if subsequently delivered to Coquard, the garnishee was nevertheless liable to plaintiff.

Brown filed a general denial of the allegations contained in plaintiff's denial of the answer.

It should be premised that no declarations of law were requested or given in this case and, hence, in so far as the facts are in dispute or the evidence warrants different inferences and findings, we are bound by the conclusion of the circuit court. But there is slight, if any, discord in the versions given by the witnesses of the transaction which plaintiff contends entitled him to judgment against Brown.

Coquard had for years been a member of the St. Louis Stock Exchange but wanted to sell his membership, and Brown told a broker by the name of Drummond, who is a member of the firm of Drummond, Betts & Co., to buy it as cheaply as he could. On November 19th, Drummond, as Brown's agent, made a contract with Coquard for the latter's membership at the price of $3,500, Coquard directing that payment be made for him to Edwards & Sons Brokerage Company. In compliance with that direction, Brown, on November 22d, delivered his check for $3,500 to Drummond, payable to Edwards & Sons Brokerage Company, and on the same day Drummond delivered the check to said brokerage company in payment for the membership. Everybody connected with this transaction, except Brown, was a member of the St. Louis Stock Exchange and knew its rules, and Drummond was on the governing board of the exchange. Said association had a rule requiring the application of an applicant for membership to be posted in the chamber of the Exchange, it seems for ten days, and another rule or by-law, that all debts or obligations owing by a member about to sell his membership to other members of the Exchange should be-

come due and payable when notice of the agreement to transfer the membership was posted on the bulletin board of the Exchange, and that such debts and obligations should be liquidated and paid by the committee of arbitration of the Exchange out of the proceeds of the membership on the consummation of its transfer.

So far as appears, Brown knew nothing about the latter rule and had nothing to do with seeing that it was observed in this affair. But Drummond turned the check over to Edwards & Sons Brokerage Company, it was held ten days from the date of Brown's application for membership, which was dated November 20th, and then delivered by the Edwards company to Coquard. This was done under the rule of the Exchange, to make good any obligations or debts Coquard might be under or owe to the other members.

Drummond testified on this point as follows:

"Q. You say it [the check] was to be paid at the expiration of ten days after his [Brown's] name was posted? A. That is according to the rules of the Stock Exchange. There was no agreement of that kind, but it is understood in the sale of a membership that the money shall be paid by the treasurer at the expiration of ten days after his name is posted."

As we gather it, the usual custom is for the price of a membership sold by a retiring to an incoming member to be paid to the treasurer of the Exchange to liquidate the retiring member's obligations. Instead of that being done in this instance, Brown's check seems to have been left with the Edwards company for the same purpose, we suppose because the members of the Drummond and Edwards concerns were all active members of the exchange.

Drummond again testified as follows:

"Q. You say that according to the rules your purchase money was to be turned over ten days after his name was posted? A. I did not. I said that was accord-

ing to the rule of the Stock Exchange. There was no such agreement between Coquard and myself.

"Q. I know you did not have an open agreement; you were both members at that time of this Stock Exchange? A. Yes, sir.

"Q. And that was the rule? A. Yes, sir."

Brown testified that he was asked for his check on November 22d and gave it in payment for Coquard's seat in the Exchange; also that he did not see the check again until it came back to him paid when his bank book was balanced. The check was delivered to Coquard by Edwards & Sons Brokerage Company on November 30th and was cashed by him on that day.

From the above recital of facts it will be noticed that while Brown's check to pay for Coquard's seat was made out and delivered by him on November 22d, it was not in fact cashed until November 30th, or five days after the service of the garnishment on Brown. Plaintiff insists that it was incumbent on Brown to stop payment of the check when he was summoned as garnishee, and as he failed to do so and allowed it afterwards to be paid to Coquard, he is answerable to plaintiff as garnishee.

Underlying this contention is the notion that the check did not constitute payment; that Brown was still indebted to Coquard on the original contract of sale. It is true enough that as between the parties a check on a bank does not constitute full payment, but the original liability may be sued on if the check is dishonored when presented for payment. Johnson-Brinkman v. Central Bank, 116 Mo. 558; Hall v. Railroad, 50 Mo. App. 179. But it is equally true that a purchaser in good faith who has given his check to a seller for the price of an article bought, has so far paid for the article that he is not subject to garnishment as the seller's debtor. Getschel v. Chase, 124 Mass. 366; National Bank v. Levy Bros., 19 L. R. A. (R. I.) 475; Pearce v. Davis, 1 Moody & R. 365; Waples on Attch. and Garn.

(2 Ed.), sec. 364; 2 Morse on Banking (4 Ed.), sec. 545. The reason of this rule is that the drawer of a check is under no duty or obligation to stop payment when garnished, for the benefit of the garnishing plaintiff; has no moral right to do so. He gave the check in lieu of cash to the seller with the understanding that the seller would get cash when he presented it for payment. To countermand the check would, therefore, be in derogation of an implied agreement that it should be honored when presented.

A different rule prevails when the drawer of the check learns before payment that the vendor sold his property in fraud of his creditors; and in such instances the drawer, after notice of the fact, is bound to stop payment if the check is still in his control. Arnholt v. Hartwig, 73 Mo. 485; Dougherty v. Cooper, 77 Mo. 528; Shoe Co. v. Lisman, 149 Mo. 85. This rule is discriminated by the cases from the other rule that the purchaser of property who has given his check in payment may not be held for the purchase price as garnishee, although the check was not yet paid when the writ was served. Arnholt v. Hartwig, supra. The distinction seems to rest on the circumstance that if the drawer of the check permits it to be paid after he has notice of the fraud and while he can stop payment, he participates in the fraud.

We have alluded to the latter rule, not because any charge of fraud was made in this case, but because decisions recognizing said rule are cited and relied on by the plaintiff in support of his demand for judgment against the garnishee. We think they lend no help to his case.

So far as appears, Brown's check was delivered to Edwards & Sons Brokerage Company without any reservation by him against its immediate payment. It was retained by said company pursuant to no direction or agreement made by him or his agent, but in observance of a rule of the Stock Exchange which it is not shown Brown even knew. It was retained, too, for a special

purpose; namely, to satisfy debts which Coquard might owe to members of the Exchange. Brown was not a party to the retention of the check by the brokerage company and its retention reached no further than to protect the members of the Exchange. So far as Brown was concerned, Coquard was entitled to the check the day it was delivered to the brokerage company, and so far as the rules of the Stock Exchange were concerned, he was entitled to it when ten days had elapsed from the posting of notice that he had sold his seat, without any claims being filed against him.

It therefore appears that neither when he was summoned nor when he answered, was Brown indebted to Coquard in any sum, and the judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.