Lorain FRICKLETON, and James W. Frickleton,
Plaintiffs-Garnishors-Respondents,

Walter J. Fischer and Marty Murray,
Plaintiffs-Garnishors-Appellants,

v.

Robert P. FULTON, Defendant,

v.

FARMERS INSURANCE COMPANY, INC.,
Garnishee-Appellant-Respondent.

Nos. 11965, 11970.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 24, 1981.

Motion for Rehearing or to Transfer
Denied Dec. 16, 1981.

Donald E. Bonacker, Jerry L. Reynolds, Bonacker & Reynolds, P.C., Springfield, for Lorain Frickleton and James Frickleton.

Thomas Strong, Matthew W. Placzek, Strong & Placzek, P.C., Springfield, for Marty Murray and Walter J. Fischer.

Warren S. Stafford, Taylor, Stafford & Woody, Springfield, for Farmers Insurance Co., Inc.

FLANIGAN, Judge.

These two appeals, one by Farmers Insurance Company, Inc., ("Farmers"), and the other by Walter Fischer and Marty Murray, stem from three garnishment actions against Farmers which were consolidated for a four-day trial before a jury. Fischer and Murray filed separate garnishment actions. The third garnishment action was filed jointly by James Frickleton and his wife Lorain Frickleton.

On November 14, 1974, a collision occurred which involved a vehicle operated by Robert P. Fulton who carried a policy of liability insurance with Farmers. The principal issue, between Farmers on the one hand and the four garnishors on the other, was whether the bodily injury limits of the

policy were 15/30 ($15,000 for all damages arising out of bodily injury sustained by one person in any one occurrence and $30,000 for all damages arising out of bodily injury sustained by two or more persons in any one occurrence) or 25/50 ($25,000—one person; $50,000—one occurrence). Farmers took the position that the limits were 15/30 and the garnishors asserted that the limits were 25/50. This issue was submitted to the jury which found that the limits were 25/50. Farmers appeals from that finding which the trial court incorporated in the judgment in all three actions.

Service of the garnishment documents upon Farmers was accomplished in the Frickleton garnishment approximately a month before it was accomplished in the Fischer and Murray garnishments. In making distribution of the proceeds the trial court held that the Frickletons were entitled to priority over Murray and Fischer. The latter two appeal from that determination.

As a result of the collision of November 14, 1974, four people sustained bodily injuries. They were Murray, Fischer, James Frickleton and Lorain Frickleton. Three lawsuits, one by James and Lorain Frickleton (No. 3198), one by Fischer (No. 3208) and one by Murray (No. 3209), were filed against Fulton in the Circuit Court of Taney County. The three cases were consolidated for trial and on February 2, 1978, that trial culminated in jury verdicts in favor of all four plaintiffs.

In addition to making claims for their own injuries, each of the Frickletons asserted a derivative claim based on injuries to

the respective spouse. Judgments against Fulton and in favor of the respective plaintiffs were entered on the day of the verdicts as follows:

(1) Lorain Frickleton—$48,133 ($41,300 for her injuries and $6,833 on her derivative claim);

(2) James Frickleton—$26,210 ($15,840 for his injuries and $10,370 on his derivative claim);

(3) Walter Fischer—$24,580; and

(4) Marty Murray—$70,416.[1]

On May 19, 1978, Farmers issued four drafts totaling $30,000, plus interest at the legal rate accruing since February 2, 1978. The $30,000 was distributed pro rata among the four plaintiffs based upon the amounts of their respective judgments.[2] The four drafts were delivered to the attorneys for the respective plaintiffs on May 19.

When originally issued the Fulton policy had liability limits of 25/50. It was the trial theory of Farmers that Fulton had requested a reduction to 15/30 and that Farmers effected the reduction prior to the collision. Under this theory the payments of May 19, 1978, exhausted the policy coverage.

All four garnishors took the position, however, that the policy limits were not reduced prior to the collision and that the coverage available for payment of the judgments was 25/50. With regard to the division of that coverage, however, Fischer and Murray parted ways with the Frickletons. Essentially it was the Murray-Fischer theory that Farmers was entitled to credit for the $30,000 already paid and that the addi-

---

1. The judgments of Fischer and Murray were credited with $5,000 each due to payments Farmers had made on their behalf under medical expense insurance.

2. The drafts were as follows:
 Lorain Frickleton—$8,695.42 ($8,527.21 principal, $168.21 interest);
 James Frickleton—$4,734.94 ($4,643.35 principal, $91.59 interest);
 Walter Fischer—$4,440.48 ($4,354.58 principal, $85.90 interest);
 Marty Murray—$12,720.94 ($12,474.86 principal, $246.08 interest).

Included as additional payees on each draft were the attorneys for the respective plaintiffs.

None of the parties, in their respective briefs, challenges the conduct of Farmers in making the prorata distribution if the policy limits were in fact 15/30. See 7A Am.Jur.2d Auto. Ins. § 429, p. 73; 70 A.L.R.2d 416 (Basis and manner of distribution among multiple claimants of proceeds of liability insurance policy inadequate to pay all claims in full); Appleman, Ins.Law & Pract., Vol. 8A, § 4892, p. 42.

tional $20,000 should also be distributed pro rata among the four plaintiffs. It was the theory of the Frickletons, which the trial court adopted, that the Frickletons had priority over the other two plaintiffs in seeking partial satisfaction of their judgments out of the $50,000 coverage. It was also the trial theory of the Frickletons, adopted by the trial court and reflected in instructions given on Frickleton's behalf, *that no matter whether the policy limits were 15/30 or 25/50* Farmers was entitled to credit for the amounts of the Frickleton drafts *but was not entitled to credit for the amounts of the Fischer and Murray drafts.*

After the jury returned its verdict finding that the policy limits were 25/50, the trial court, in Case No. 3198, awarded Lorain Frickleton judgment against Farmers in the amount of $23,723.26 ($23,305.79 as principal and $417.47 as interest). In the same case James Frickleton was awarded judgment against Farmers in the amount of $11,397.21 ($11,196.65 as principal and $200.56 as interest). These calculations[3] gave credit to Farmers for the amount of the Frickleton drafts, but gave no credit to Farmers for the Fischer and Murray drafts. The judgment of the trial court then recited that after the foregoing amounts had been paid, there remained available, under a coverage of 25/50, the sum of $2,327 for application to the Fischer and Murray judgments. As to the latter judgments only, Farmers was given credit for the Fischer and Murray drafts respectively and the judgments recite that "after applying such credit the court finds that Farmers has made payments exhausting the personal injury coverage and the court will direct that Fischer and Murray take nothing in this action against Farmers." Fischer and Murray were denied relief in their respective garnishments and as intervenors in the Frickleton garnishment.

The dispositive issue on this appeal is this: After the Fischer and Murray drafts were issued [see § 400.3–102(1)(a)][4] by Farmers on May 19, 1978, and delivered on that date to the attorneys for Fischer and Murray, were the amounts represented by those drafts subject to garnishment on May 22, 1978, when Farmers was served with the Frickleton garnishment documents? Resolution of this issue requires consideration of the nature of the drafts involved and the sequence of the material events. This court holds that the amounts represented by the Murray and Fischer drafts were not subject to the subsequent Frickleton garnishment and that the Frickleton trial instructions, based on the theory that they were so subject, were prejudicially erroneous to Farmers.

The material events were as follows:

May 19, 1978—The four claims drafts were delivered to their respective payees and their attorneys. Draft 774309 was drawn on Farmers, payable to the order of Marty Murray (and his attorneys), was in the amount of $12,720.94, was *"payable through"* Commerce Bank of Kansas City, was dated May 18, 1978, and was signed by Robert O. Biser, Farmers claims representative.[5] The draft contained additional information including the policy number of the Fulton policy, the date of the accident, and identification of Fulton as the named insured. The other drafts, except for their payees and amounts, were similar.

May 21, 1978—In Case No. 3198, at the instance of the attorney for the Frickletons, the circuit clerk of Taney County issued general executions against Fulton and in favor of Lorain Frickleton in the amount of $48,133 and in favor of James Frickleton in the amount of $26,210.

---

**3.** None of the parties questions the mathematical accuracy of these calculations or those reflected in the drafts mentioned in footnote 2.

**4.** All references to statutes are to RSMo 1978, V.A.M.S. and all references to rules are to Missouri Rules of Court, V.A.M.R.

Sec. 400.3–102(1)(a) is contained in "Uniform Commercial Code—Commercial Paper." It reads: "(1) In this article unless the context otherwise requires

(a) 'Issue' means the first delivery of an instrument to a holder or a remitter."

**5.** Mr. Biser signed all four drafts. The parties agree that he had authority to do so.

May 22, 1978—In Case No. 3198, at the instance of the attorney for the Frickletons, the sheriff of Cole County served upon the Superintendent of Insurance a summons to garnishee addressed to Farmers in aid of the James Frickleton execution. The summons stated, in part, "I do hereby seize and attach in your hands all debts due or to become due by you to Robert P. Fulton, the defendant in the above entitled cause, or so much thereof as will be sufficient to satisfy the sum of $26,210 with interest and costs of suit." On the same date the sheriff also delivered to the superintendent a summons in aid of the Lorain Frickleton execution. That summons was similarly worded except that the sum to be satisfied, with interest and costs, was $48,133.

May 23, 1978—Walter Fischer executed a partial satisfaction of judgment ($4,354.58 plus $85.90 interest) and this document was later filed with the circuit clerk.

May 25, 1978—Lorain Frickleton executed a partial satisfaction of judgment ($8,527.21 plus $168.21 interest) and James Frickleton executed a partial satisfaction of judgment ($4,643.35 plus $91.59 interest). These documents were later filed with the circuit clerk.

May 26, 1978—Marty Murray executed a partial satisfaction of judgment ($12,474.86 plus $246.08 interest) and it was later filed with the circuit clerk.

"Some date after May 22, 1978" but within a few days thereof, the four drafts arrived at Commerce Bank of Kansas City and were delivered by that bank to Farmers the next day. Farmers gave that bank a draft drawn on the Bank of America in California for the total amount of the four drafts, and others.

June 21, 1978—In Case No. 3208 and Case No. 3209, at the instance of the attorney for Fischer and Murray, the circuit clerk of Taney County issued a general execution against Fulton and in favor of Fischer for $15,225.42 and in favor of Murray for $52,-941.14.

June 23, 1978—In Case No. 3208 and Case No. 3209 garnishment documents were served on Farmers.

Thereafter the court entered an order allowing plaintiffs Fischer and Murray to intervene in the garnishment action in Case No. 3198 and consolidated the three garnishment actions.

■■■ "[A]fter an injured person has obtained a judgment against an insured defendant, the judgment creditor stands in the shoes of the insured person and his rights are no greater and no less than the insured's rights would have been if he had paid the judgment and then sued his insurance company to recover the amount so paid." *Greer v. Zurich Insurance Company*, 441 S.W.2d 15, 30 (Mo.1969). "[A] garnishee can only be compelled to deliver assets of defendant to plaintiff if the garnishee is indebted to the defendant." *Geiwitz v. Geiwitz*, 473 S.W.2d 781, 783 (Mo. App.1971).

Farmers' first point attacks Instruction 7[6] and Instruction 10[7] which the trial court gave at the request of the Frickletons. Each of these instructions was based on the

---

**6.** INSTRUCTION NO. 7

Under the law Farmers Insurance Company is liable to Lorain Frickleton in this case. Therefore, you must find the issues in favor of Lorain Frickleton and against Farmers Insurance Company in at least the amount of Six Thousand Five Hundred Eighty-eight Dollars Thirty-three Cents ($6,588.33), but if you find that the limit of liability was Twenty-five Thousand Dollars ($25,000.00) per person, then your verdict must be in the amount of Twenty-three Thousand Seven Hundred Twenty-three Dollars Twenty-six Cents ($23,723.26) instead of Six Thousand Five Hundred Eighty-eight Dollars Thirty-three Cents ($6,588.33).

**7.** INSTRUCTION NO. 10

Under the law Farmers Insurance Company is liable to James W. Frickleton in this case. Therefore, you must find the issues in favor of James W. Frickleton and against Farmers Insurance Company in at least the amount of Ten Thousand Five Hundred Forty-one Dollars Ninety-five Cents ($10,541.95), but if you find that the limit of liability was Twenty-five Thousand Dollars ($25,000.00) per person then your verdict must be in the amount of Eleven Thousand Three Hundred Ninety-seven Dollars Twenty-one Cents ($11,397.21) instead of Ten Thousand Five Hundred Forty-one Dollars Ninety-five Cents ($10,541.95).

theory that the summonses to garnishee, served on May 22, 1978, on behalf of the Frickletons in Case No. 3198, had the effect of garnishing the full policy limits for the benefit of the Frickletons and that Farmers was not entitled to take credit for the amounts represented by the drafts issued to Fischer and Murray.[8]

In its first attack on the two instructions Farmers asserts that it, as garnishee, was entitled to credit for the four claim drafts delivered to the attorneys for the respective plaintiffs on May 19, 1978, because "said claim drafts were negotiable instruments and Farmers was liable on said drafts, payment could have been enforced, and delivery of the claims drafts was conditional payment rendering the funds represented by the claims drafts without the control of garnishee and not subject to garnishment."

Seeking to uphold Instructions 7 and 10, the Frickletons argue that "all amounts" of the policy coverage "were unpaid and in [Farmers'] control at the time of the service" of the garnishment documents because " 'payable through' drafts delivered before service required *acceptance* by law and were not payable until [Farmers] delivered funds to the [Commerce] bank which was after the service of the Frickleton garnishment summonses." The Frickletons also argue that the Murray and Fischer drafts were not "negotiable instruments." The Frickleton arguments are unsound.

Before discussing the nature of "payable through" drafts it is worthwhile to consider the garnishability of the amounts represented by the Murray and Fischer drafts if they had been "checks"[9] and not "payable through" drafts. In *Prewitt v. Brown*, 101

Mo.App. 254, 73 S.W. 897, 898 (1903), the court held that a buyer, who in good faith had given his check to a seller for the purchase price of an article, was not subject to garnishment as the debtor of the seller (judgment debtor) because, as garnishee, the buyer was under no obligation to stop payment of the check unless the buyer knew before delivery of the check that the seller had sold his property in fraud of his creditors.

"The reason of this rule is that the drawer of a check is under no duty or obligation to stop payment when garnished, for the benefit of the garnishing plaintiff; has no moral right to do so. He gave the check in lieu of cash to the seller, with the understanding that the seller would get cash when he presented it for payment. To countermand the check would, therefore, be in derogation of an implied agreement that it should be honored when presented." *Prewitt*, 73 S.W. at 898.

■ The *Prewitt* decision is in accord with the general view that the drawer of a check is under no duty or obligation to stop payment, when garnished, for the benefit of the garnishing plaintiff. See 6 Am.Jur.2d Att. and Garn. § 517, p. 928; 38 C.J.S. Garnishment § 96, p. 305; 94 A.L.R. 1391 (Indebtedness as subject to garnishment after debtor has given his check therefor).

The *Prewitt* rule with respect to checks has been followed in jurisdictions where the Uniform Commercial Code has been adopted. See *Pearson Grain Co. v. Plains Trucking Co., Inc.*, 494 S.W.2d 639 (Tex.Civ.App. 1973). In a pre-UCC case the same rule

---

8. The brief of the Frickletons asserts, and Farmers does not dispute the assertion, that the figures set forth in Instructions 7 and 10 give Farmers credit for the payment of the $8,695.42 draft paid to Lorain Frickleton and the $4,734.94 draft paid to James Frickleton. The Frickleton brief also says that if the coverage limit was 25/50, James Frickleton "by his submission, . . . waived his derivative damages judgment [of $10,370] in favor of Lorain's writ of garnishment and computed his recovery [on his judgment of $15,840.00 for his injuries]." Farmers does not dispute that contention.

9. Although a "check" is a draft, not all drafts are checks. See § 400.3–104.

See, generally, 23 A.L.R.3d 932 (Construction and effect of UCC Art. 3, dealing with commercial paper.)

"A draft or bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay a sum certain to order or to bearer. Such a draft becomes a check when it is drawn on a bank and payable on demand." 23 A.L.R.3d 932, 940.

was invoked with respect to a draft issued by an insurance company. *Creditors' Claim & Adjustment Co. v. Larson*, 171 Wash. 575, 18 P.2d 844 (1933). Indeed in the latter case the insurance company stopped payment but that act was ineffective to give the garnishor rights superior to those of the holder of the draft. The insurance company was entitled to an adjudication that it was not liable under the writ of garnishment for the indebtedness evidenced by the draft.

Is there a valid reason why the *Prewitt* rule should not apply to the Murray and Fischer drafts? This court answers the question in the negative.

Sec. 400.3–120 reads:

"An instrument which states that it is 'payable through' a bank or the like designates that bank as a collecting bank to make presentment but does not of itself authorize the bank to pay the instrument."

The "Official Comment" under the foregoing statute reads, in pertinent part:

"Insurance, dividend or payroll checks, and occasionally other types of instruments, are sometimes made payable 'through' a particular bank. This section states the commercial understanding as to the effect of such language. The bank is not named as drawee, and it is not ordered or even authorized to pay the instrument out of the drawer's account or any other funds of the drawer in its hands. Neither is it required to take the instrument for collection in the absence of special agreement to that effect. It is merely designated as a collecting bank through which presentment is properly made to the drawee."

The Murray and Fischer drafts were of the "payable through" variety. A "payable through" draft is a negotiable instrument [10] (even if it contains the words "upon acceptance").[11] It has the status of a note [12] or an accepted bill of exchange.[13] It is accepted by the very act of issuing it.[14] Presentment and acceptance are not necessary to make the draft the liability of the drawer to the payee or holder.[15] Stopping payment would not absolve the drawer-drawee [Farmers] from liability to a holder in due course.[16] Indeed, there are state-

---

**10.** Sec. 400.3–104; *U.A.W.–C.I.O. Local # 31 v. Royal Insurance Co., Ltd.*, 594 S.W.2d 276, 279 (Mo. banc 1980); *Aetna Cas. & Sur. Co. v. Traders Nat. Bank & T. Co.*, 514 S.W.2d 860, 864 (Mo.App.1974); *Lialios v. Home Ins. Companies*, 87 Ill.App.3d 740, 43 Ill.Dec. 193, 194, 410 N.E.2d 193, 194 (1980).

For a discussion of some of the reasons insurance companies may use "payable through" drafts instead of checks, see *Aetna Cas. & Sur. Co. v. Traders Nat. Bank & T. Co.*, supra, 514 S.W.2d at 865.

**11.** *Canal Ins. Co. v. First Nat. Bank of Fort Smith*, 596 S.W.2d 710, 714 (Ark.App.1979) (adopted as opinion of Supreme Court of Arkansas, *Canal Ins. Co. v. First Nat. Bank of Fort Smith*, 596 S.W.2d 709 (Ark.1980).

**12.** *U.A.W.–C.I.O. Local # 31 v. Royal Insurance Co., Ltd.*, 594 S.W.2d 276, 279 (Mo. banc 1980); § 400.3–118(a).

**13.** *Lialios v. Home Ins. Companies*, 87 Ill.App.3d 740, 43 Ill.Dec. 193, 194, 410 N.E.2d 193, 194 (1980); *Canal Ins. Co. v. First Nat. Bank of Fort Smith*, 596 S.W.2d 710, 714 (Ark.App.1979) (adopted as opinion of Supreme Court of Arkansas, *Canal Ins. Co. v. First Nat. Bank of Fort Smith*, 596 S.W.2d 709 (Ark.1980).

**14.** *Lialios v. Home Ins. Companies*, 87 Ill.App.3d 740, 43 Ill.Dec. 193, 194, 410 N.E.2d 193, 194 (1980); *Canal Ins. Co. v. First Nat. Bank of Fort Smith*, 596 S.W.2d 710, 714 (Ark.App.1979) (adopted as opinion of Supreme Court of Arkansas, *Canal Ins. Co. v. First Nat. Bank of Fort Smith*, 596 S.W.2d 709 (Ark.1980); *Falk's Food Basket v. Selected Risks Ins. Co.*, 214 Pa.Super. 522, 257 A.2d 359 (1969).

**15.** *Lialios v. Home Ins. Companies*, 87 Ill.App.3d 740, 43 Ill.Dec. 193, 194, 410 N.E.2d 193, 194 (1980); *Canal Ins. Co. v. First Nat. Bank of Fort Smith*, 596 S.W.2d 710, 714 (Ark.App.1979) (adopted as opinion of Supreme Court of Arkansas, *Canal Ins. Co. v. First Nat. Bank of Fort Smith*, 596 S.W.2d 709, 713–14 (Ark.1980); *Lee v. Skidmore*, 49 Ohio App.2d 347, 361 N.E.2d 499, 500 (1976); *Falk's Food Basket v. Selected Risks Ins. Co.*, 214 Pa.Super. 522, 257 A.2d 359, 360 (1969).

**16.** *U.A.W.–C.I.O. Local # 31 v. Royal Insurance Co., Ltd.*, 594 S.W.2d 276, 280 (Mo. banc 1980); *Gen. Motors Accept. v. Gen. Acc. Fire & Life*, 67 A.D.2d 316, 415 N.Y.S.2d 536, 538 (1979); *National Security Fire and Casualty Co. v. Mazzara*, 289 Ala. 542, 268 So.2d 814, 817 (1972); *Bailey v. Polster*, 468 S.W.2d 105, 109 (Tex.Civ.App.1971).

ments that as drawer Farmers could not countermand the drafts.[17]

"A payee may be a holder in due course," § 400.3–302(1), (2), and the Frickletons make no claim that Murray and Fischer were not such holders. There is not the slightest evidence, nor indeed any contention, that either Farmers or the payees of the Murray and Fischer drafts were guilty of fraud or sharp practice.

 It follows that the amounts represented by the Murray and Fischer drafts were no longer, to employ the language of the garnishment summonses served on Farmers on May 22, "debts due or to become due by [Farmers] to [Fulton]." The amounts represented by those drafts (as well as the amounts of the other two drafts issued on May 19), were not subject to garnishment on May 22. In light of the foregoing, Instructions 7 and 10 are erroneous.

The first sentence of Instruction 7 told the jury, erroneously, that Farmers "is liable to Lorain Frickleton in this case." That statement was false if in fact the policy limits were 15/30. Yet, under Instruction 7, the jury did not have the option of finding in favor of Farmers. The instruction contradicts the fact that the verdict should have been in favor of Farmers if the jury found the policy limits to be 15/30.

The four drafts issued on May 19 were admitted into evidence and the jury was aware of them. They totaled $30,000 (plus interest). Nevertheless Instruction 7 told the jury that Lorain Frickleton was entitled to more money from Farmers, over and above the $30,000 previously expended. The figure of $6,588.33 was inserted in Instruction 7 on the erroneous theory that Farmers was not entitled to credit for the Murray-Fischer drafts. Instruction 10 was based on the same erroneous theory.

It is clear that these two instructions prejudiced Farmers in seeking to maintain its position that the policy limits were 15/30. If that position was sound, an issue this court does not reach, how could Farmers explain the fact to the jury that Farmers was required to pay the Frickletons more money? The jury might believe, in light of the tenor of Instructions 7 and 10, that Farmers was guilty of some impropriety in having issued the Murray-Fischer drafts and in making no effort to interfere with their handling.

The prejudice to Farmers arising by reason of Instructions 7 and 10 [18] tainted the trial of the major issue, 15/30 or 25/50. Although the Murray-Fischer instructions did not contain the errors of Instructions 7 and 10, Farmers' position with respect to that issue was prejudiced in the Murray-Fischer-Farmers dispute as well as the Frickleton-Farmers dispute. For this reason it is necessary to reverse the judgments in all three garnishment actions and to remand. Rule 84.14.

No party to these appeals claims that the present record is a basis for deciding the 15/30–25/50 issue as a matter of law. The resolution of that issue involves matters of fact for jury determination.

On these appeals it is not necessary to determine the respective rights of the Frickletons and Murray and Fischer to the additional $20,000 coverage in the event the policy limits are ultimately determined to be 25/50. There is no need to decide whether a pie will be shared simultaneously or consecutively until it is determined that a pie exists.

Reversed and remanded.

GREENE, P. J., and TITUS, J., concur.

---

17. *Canal Ins. Co. v. First Nat. Bank of Fort Smith*, 596 S.W.2d 710, 714 (Ark.App.1979) (adopted as opinion of Supreme Court of Arkansas, *Canal Ins. Co. v. First Nat. Bank of Fort Smith*, 596 S.W.2d 709 (Ark.1980); *Bailey v. Polster*, 468 S.W.2d 105, 109 (Tex.Civ.App. 1971).

18. It is unnecessary to determine the validity of additional criticisms leveled by Farmers against Instructions 7 and 10.